BENNY G. VASSEY v. WILLIAM H. BURCH, M.D.

No. 8229SC750

(Filed 20 September 1983)

1. Evidence § 50— medical expert—suppression of testimony erroneous

In a medical negligence action which was based on the alleged failure of the defendant physician to properly diagnose and treat plaintiff's appendicitis, the trial court erred in failing to allow a medical expert to express an opinion before the jury that the infection would not have developed if the appendix had been removed the day before even though the opinion was haltingly and apologetically expressed since the opinion was of great value to plaintiff and could have tipped the scales of the jury in his favor.

2. Evidence § 40— nonexpert opinion testimony—blood count

The trial court in a medical negligence action erred in striking plaintiff's testimony that "[n]o blood count had been done up to that point." It is not necessary for a lay witness to demonstrate any special knowledge of medicine before he can be permitted to testify that a blood count was done on him.

APPEAL by plaintiff from *Seay, Judge.* Judgment entered 27 January 1982 in Superior Court, POLK County. Heard in the Court of Appeals 13 May 1983.

This medical negligence action is based on the alleged failure of the defendant physician to properly diagnose and treat plaintiff's appendicitis. According to plaintiff, because of severe abdominal pain and stomach disorders for several hours, he consulted defendant, who listened to his heart and lungs, discussed his signs and symptoms, and gave him a shot of penicillin, but did no other test or examination. Plaintiff's symptoms persisted and about ten hours later, he went to the hospital emergency room, where he was given certain medicines and sent home. About sixteen hours after that plaintiff went to see Dr. Morgan, who sent him to the hospital, where during surgery his appendix, which

was gangrenous, was removed. Because of widespread infection, various complications developed, requiring several other operations, and plaintiff incurred hospital and medical expenses in excess of $60,000. After many developments irrelevant to this appeal, the case came on for trial and the jury rendered a verdict for the defendant.

*Hamrick & Hamrick, by J. Nat Hamrick, for plaintiff appellant.*

*Harrell and Leake, by Larry Leake, for defendant appellee.*

PHILLIPS, Judge.

[1] Crucial to plaintiff's case was expert medical testimony that the defendant's failure to diagnose and treat the appendicitis caused the troublesome and expensive complications that followed. If the abdominal infection was already underway when the plaintiff consulted defendant—or if it resulted from a laceration of the bowel that occurred during surgery, a possibility raised by the hospital records—defendant would not be liable. Dr. Morgan, who assisted the surgeon that performed the appendectomy, observed some cloudy-looking fluid within the plaintiff's abdomen when it was opened up; and he testified that the fluid may have leaked from the infected and necrotic appendix. But he was not permitted to express the opinion before the jury that the infection would not have developed if the appendix had been removed the day before. Dr. Morgan's proffered answer to the hypothetical question was as follows:

> No, the problems would not have arisen if it had been removed at the time. Again, this comes in this rumor I'm hearing and books.

The question was partially based on the plaintiff's hospital records, salient portions of which had been read into evidence, and the court apparently construed the doctor's answer, as defendant contends, as indicating that he did not deem the record entries referred to as being reliable, and therefore really had no opinion about the matter. But since there is nothing in the record to suggest that Dr. Morgan had any basis for disputing the validity of any of the records, or that he even did so, it seems more likely to us that the doctor was merely being apologetic to a fellow practi-

tioner he was testifying against, and that despite the irrelevant surplusage did have an opinion of material benefit to plaintiff's case, which it was error not to receive. Nor was the error erased, as defendant contends, because somewhat the same testimony was received from another doctor later. Though Dr. Brown did testify that the appendix had probably been leaking into the abdominal cavity for between six and twelve hours before it was removed, and that "[i]f the appendix had been removed before it started leaking, chances of having infection would be very unlikely," he was a pathologist, who had not seen plaintiff and did not treat patients; whereas, Dr. Morgan not only observed the operation on plaintiff, he was the only living witness that did so, as the operating surgeon died before trial, and Dr. Morgan practiced medicine in somewhat the same way the defendant did. Thus, it seems to us that his opinion, though haltingly and apologetically expressed, as so often happens in medical negligence cases, was nevertheless of great value to plaintiff, and that it could have tipped the scales of the jury in his favor.

[2] The trial court also erred in striking plaintiff's testimony that "[n]o blood count had been done up to that point." The basis for this ruling, apparently, was that it had not been shown that plaintiff was familiar with medical technology and knew what a blood count was. In our view, it is not necessary for a lay witness to demonstrate any special knowledge of medicine before he can be permitted to testify that a blood count was done on him. If the plaintiff claimed to know that a test of his blood was not done by the defendant, he should have been permitted to testify accordingly.

New trial.

Judges HILL and JOHNSON concur.